UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOPOLDO PENA MENDOZA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>FONSECA MCELROY GRINDING CO., INC, et al.,<br><br>    Defendants. | Case No. 15-cv-05143-WHO<br><br>**ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 26, 30 |

## INTRODUCTION

Defendant Granite Rock paid plaintiffs the California prevailing wage rate for work performed at various public works sites. Pursuant to an agreement with the local union, however, Granite Rock paid plaintiffs less than the prevailing wage rate for "mobilization work," including loading and transporting the milling machine from Granite Rock's permanent yard to the public works sites, and back. The parties cross moved for summary judgment on plaintiffs' claim that they were entitled to the prevailing wage rate for the mobilization work.

California cases have not addressed this specific issue. I conclude that the mobilization work involved here is not an integrated aspect of the flow process of construction for the public works involved, and accordingly must GRANT Granite Rock's motion for partial summary judgment and DENY plaintiffs' cross-motion.

## BACKGROUND

### I. FACTUAL BACKGROUND

Granite Rock is a closely-held construction materials company that provides asphalt, concrete, and other building materials for public and private commercial and residential construction projects. Statement of Undisputed Material Facts ("UMF") (Dkt. No. 28) ¶ 1. Defendant Fonseca McElroy Grinding Co., Inc. ("FMG") was a construction company

specializing in road work. In or about April 2014, FMG was acquired by and merged with Granite Rock. *Id.* ¶ 2. At all relevant times, FMG and Granite Rock were signatory to the Operating Engineers Local No. 3 Master Agreement for Northern California ("Master Agreement"). *Id.* ¶ 3; *see also id.*, Ex. 1.

In or about September 2010, FMG entered into a Memorandum of Agreement ("MOA") with Operating Engineers Local No. 3, that provided for a "Lowbed Transport" wage rate for mobilization work lower than the wage rate in the Master Agreement for operating engineers engaged in on-site construction. *Id.* ¶ 4. Granite Rock was a signatory to the MOA. *Id.* The MOA supplemented the Master Agreement and applied to the mobilization work performed by plaintiffs. *Id.* The MOA contained a provision stating, "If during the term of this Agreement, the DIR determines that these rates are not in compliance with the law, the parties shall immediately meet to address these classifications and wage rates." *Id.*, Ex. 2.

Plaintiffs Leopoldo Pena Mendoza, Elviz Sanchez, and Jose Armando Cortes worked for FMG and then Granite Rock as union operating engineers. *Id.* ¶¶ 5-7. At various times during their employment, Granite Rock employed plaintiffs on "public works" construction projects as defined in Labor Code Section 1720(a)(1).[1] *Id.* ¶ 8.

Granite Rock paid plaintiffs a prevailing wage rate as published by the California Department of Industrial Relations ("DIR") for the classification determination of operating engineer for all work performed at the public works project sites, including the operation of a milling machine used in breaking up asphalt and concrete on streets, roads, and pavement. *Id.* ¶ 9. The public works contracts did not specify the daily schedule for Granite Rock's workers or their place of reporting for work. *Id.* ¶ 10.

---

[1] This Section defines "public works" as "[c]onstruction, alteration, demolition, installation or repair work done under contract and paid for in whole or in part out of public funds, except work done directly by any public utility company . . . . '[C]onstruction' includes work performed during the design and preconstruction phases of construction, including, but not limited to, inspection and land surveying work, and work performed during the postconstruction phases of construction, including, but not limited to, all cleanup work at the jobsite." Cal. Labor Code § 1720(a)(1).

2

1    Plaintiffs were not paid a prevailing wage rate for the DIR classification determination of
2    operating engineer while performing offsite "mobilization work" covered by the MOA because
3    neither defendant considered the work subject to the California Labor Code's prevailing wage
4    requirements. *Id.* ¶ 11. Mobilization work consisted of loading milling machines, which were
5    stored at FMG's or Granite Rock's permanent yard or in offsite storage locations, onto a lowbed
6    trailer; performing a light, brake, and fluid level check of a semi-truck used to transport the heavy
7    equipment; driving a transport truck with the milling machine to a construction jobsite; and
8    driving the transport truck with the milling machine back to FMG's or Granite Rock's permanent
9    yard. *Id.* The offsite storage locations where plaintiffs performed mobilization work do not
10   depend on any particular public works project for their existence. *Id.* ¶ 12.

## II. PROCEDURAL BACKGROUND

Plaintiffs assert four claims: (1) failure to pay overtime in violation of the Federal Labor Standards Act, 29 U.S.C §§ 207, 216(B), 225(A); (2) failure to pay overtime and the prevailing wage rate in violation of California Labor Code §§ 1194, 1194.2, 510, 1771, 1774; (3) a penalty for failure to pay wages owed at time of termination under California Labor Code § 203; and (4) unfair business practices in violation of California Business and Professions Code § 17200. The parties cross-moved for summary judgment on Claim 2 for violations of California Labor Code sections 1171 and 1774 (failure to pay the prevailing wage rate). Granite Rock's Brief re Motion for Partial Summary Judgment ("Granite Rock MSJ") (Dkt. No. 27); Plaintiff's Brief re Motion for Partial Summary Judgment ("Plaintiffs' MSJ") (Dkt. No. 31). I heard argument on October 26, 2016.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing,

3

the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

I must decide whether the mobilization work performed by plaintiffs is covered work under California's prevailing wage law. This determination turns on a question of statutory interpretation: whether such offsite work is "in the execution of" a public works contract. Cal. Labor Code §§ 1772, 1774.

**I.  CALIFORNIA'S PREVAILING WAGE LAW**

When interpreting state statutes, federal courts are bound by an interpretation of the law given by the state's highest court. *Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1034 (9th Cir. 2003). Where a state's highest court has not addressed an issue, the federal court "must predict how that court would interpret the statute." *Id.* "The object that a statute seeks to achieve is of primary importance in statutory interpretation." *Lusardi Constr. Co. v. Aubry*, 1 Cal. 4th 976, 987 (1992). "California courts have established a process of statutory interpretation to determine legislative intent that may involve up to three steps . . . [W]e first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction." *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1396 (Cal. Ct. App. 2013) (internal punctuation and citations omitted). The second and third steps are only taken when the meaning of the words is not clear. *Id.* at 1397.

### A. Statutory Text

The California Labor Code requires "all workers employed on public works" be paid the prevailing wage rate determined by the DIR Director. Cal. Labor Code §§ 1770, 1771. "Workers employed by contractors or subcontractors in the execution of any contract for public work are deemed to be employed upon public work." Cal. Labor Code § 1772. A public works contractor must pay "all workmen employed in the execution of the contract" no less than the prevailing wage rate. Cal. Labor Code § 1774.

California courts addressing the scope of the prevailing wage law have found that, from the statutory language itself, the legislature's "intent concerning geographical limitations on the application of the prevailing wage law is ambiguous." *Sheet Metal Workers' Int'l Ass'n, Local 104 v. Duncan*, 229 Cal. App. 4th 192, 204 (2014), *review denied* (Nov. 19, 2014).

### B. Purpose of the Prevailing Wage Law

The California Supreme Court has explained:
> The overall purpose of the prevailing wage law . . . is to benefit and protect employees on public works projects. This general objective subsumes within it a number of specific goals: to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees.

*Lusardi Constr. Co. v. Aubry*, 1 Cal. 4th 976, 987 (1992).

Additionally, the California Labor Code provides that "[i]t is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation, and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards." Cal. Lab. Code § 90.5(a).

In light of the prevailing wage law's purpose, courts must liberally construe the prevailing wage law. *City of Long Beach v. Dep't of Indus. Relations*, 34 Cal. 4th 942, 950 (2004). But

1    courts "cannot interfere where the Legislature has demonstrated the ability to make its intent clear
2    and chosen not to act." *Id.* (internal quotation marks omitted).

### C. Case Law Addressing Offsite Work and the Prevailing Wage Law

There is no case law or administrative decision addressing the exact circumstances at issue here. However, the parties have identified as instructive several decisions involving hauling of building materials and offsite fabrication work.

#### 1. Hauling of Materials

In *O.G. Sansone Co. v. Department of Transportation*, the California Court of Appeal addressed the issue of who is a subcontractor required to comply with the prevailing wage law. 55 Cal. App. 3d 434 (1976). The relevant contract involved a highway construction project requiring "furnishing, spreading, and compacting aggregate subbase." *Id.* at 438, 443. The primary contractors subcontracted to two independent trucking companies the duty of hauling the subbase to the project site. *Id.* at 439. Upon completion of the project, the Department of Transportation withheld a portion of the contract price from the primary contractors because the trucking companies had not paid their employees at the prevailing wage rate. *Id.* at 438. The primary contractors argued the companies were not subcontractors within the meaning of the prevailing wage law. *Id.* at 441.

*Sansone* looked to *H.B. Zachry Co. v. United States*, 344 F.2d 352 (Ct. Cl. 1965), a case interpreting the Davis-Bacon Act, the federal prevailing wage law. 55 Cal. App. 3d at 442. *Zachry* noted that the Davis-Bacon Act does not cover bona fide material suppliers, or "materialmen," who sell building materials to a public works contractor. 344 F.2d at 359. For the exemption to apply, "the materialman must be selling supplies to the general public, the plant must not be established specially for the particular contract, and the plant is not located at the site of the work." *Id.* *Zachry* held that a trucker's employees who delivered materials to a project site were not entitled to the federal prevailing wage because the delivery of standard materials was a "function which is performed independently of the contract construction activities." *Id.* at 361.

*Sansone* also relied on *Green v. Jones*, 23 Wis.2d 551 (Wis. 1964), where the court assessed whether employees of a trucking firm were covered under Wisconsin's prevailing wage

law. 55 Cal. App. 3d at 443. The hauled materials in *Green* "were dumped or spread directly on the roadbed and were immediately used in the construction of the project." *Id.* at 444. *Green*, therefore, held that the drivers were entitled to a prevailing wage because "[t]he delivery of materials was an integrated aspect of the 'flow' process of construction." 23 Wis.2d at 563.

The *Sansone* court noted that, unlike in *Zachry*, the primary contractors acquired the hauled materials from third parties under "private borrow agreements"; the truckers were not materialmen or employees of material men. 55 Cal. App. 3d at 443, 445. The truckers hauled materials "taken from locations adjacent to and established exclusively to serve the project site," and delivered them to the project site. *Id.* at 443. The truckers performed an "integral part" of the primary contractors' obligations under the public works contract. *Id.* at 445. Therefore, the court held that the truckers were entitled to the prevailing wage rate. *Id.*

In *Williams v. SnSands Corp.*, the California Court of Appeal addressed whether drivers hauling materials away from a public works project site for resale or disposal were employed "in the execution" of a public works contract and, therefore, entitled to the prevailing wage rate. 156 Cal. App. 4th 742, 749 (2007). In interpreting the meaning of "in the execution," the court looked to a variety of dictionaries and held that "the use of 'execution' in the phrase 'in the execution of any contract for public work,' plainly means the carrying out and completion of all provisions of the contract." *Id.* at 750.

*Williams* found that critical to *Sansone*'s analysis was whether the trucking company was a "bona fide materials supplier[] conducting an operation truly independent of the performance of the general contract for public work, as opposed to conducting work that was integral to the performance of that general contract." *Id.* at 752. *Williams* then concluded, "What is determinative is the role the transport of the materials plays in the performance or 'execution' of the public works contract." *Id.* (original emphasis). The court set out a series of factors to consider: (i) "whether the transport was required to carry out a term of the public works contract"; (ii) "whether the work was performed on the project site or another site integrally connected to the project site"; and (iii) "whether work that was performed off the actual construction site was nevertheless necessary to accomplish or fulfill the contract." *Id.*

The court noted that the parties did not provide evidence of either the public works contracts for which the driver did the off-hauling work or the custom and practice of a public works contractor's obligation to remove unused materials from the jobsite. *Id.* at 753. There was also no evidence that the prime contractor at the public works site directed how the materials should be delivered or used at other locations. *Id.* "In the absence of evidence that, either by contract or custom, the off-hauling . . . was an integrated aspect of the flow process of construction," *Williams* held that the drivers were not entitled to the prevailing wage because the off-hauling was "unrelated to the performance of the prime public works contract" and the material supplier exception applied. *Id.* (internal quotation marks omitted).

### 2. Offsite Fabrication

In *Sheet Metal Workers*, the California Court of Appeal reviewed "whether the prevailing wage law applies to an employee of a subcontractor who fabricates materials for a public works project at a permanent offsite manufacturing facility that is not exclusively dedicated to the project." 229 Cal. App. 4th at 196. Under the relevant public works contract, the subcontractor was required to "furnish all labor, materials, equipment, services and supplies necessary to complete" the heating, ventilation, and air conditioning (HVAC) portion of the project. *Id.* The subcontractor did not pay its workers the prevailing wage rate for the HVAC ductwork fabrication done at its permanent, offsite facility. *Id.* at 196-197. The court held that "[o]ffsite fabrication is not covered by the prevailing wage law if it takes place at a permanent offsite manufacturing facility and the location and existence of that facility is determined wholly without regard to the particular public works project." *Id.* at 214.

In its analysis, the court noted that *Sansone* and *Williams* "set forth a general framework for considering whether certain functions are integral to the performance of a public works contract," including "whether an operation is truly independent of the contract construction activities—i.e., whether it is integrated into the flow process of construction." *Id.* at 206. However, the court noted that these cases were not dispositive there because they involved hauling, rather than fabrication or manufacturing. *Id.* at 206-07. It recognized that "hauling

activities necessarily have at least a limited geographical connection to the public works site," whereas "offsite fabrication could theoretically take place anywhere in the world." *Id.* at 206.

*Sheet Metal Workers* found that the DIR had a long-standing practice that "fabrication work performed at a permanent offsite facility not exclusively dedicated to the public works project is not covered by the prevailing wage law, whereas fabrication work performed at a temporary facility that is dedicated to the project is covered." *Id.* at 209. It relied in part on *Russell Mechanical Inc.* (Sept. 17, 1984), where the DIR held that offsite fabrication of a custom product was not subject to prevailing wage laws. *Id.* at 208. The DIR reasoned that "extending coverage to offsite fabrication would not significantly protect local labor markets, because fabrication does not necessarily take place in the local labor market." *Id.* The DIR concluded that the bona fide materials supplier exemption applied because the fabrication was done by a "standard supplier of sheet metal products to the general public, its facility existed long before the public works contract, and the facility was not located on or near the site of the public work." *Id.*

Looking to *Sansone* and *Williams*, the DIR's practice, and the Davis Bacon Act, the court held that "[w]ork performed at a permanent, offsite, nonexclusive manufacturing facility does not constitute an integral part of the process of construction at the site of the public work." *Id.* at 212. Instead, the court found that such work was "independent of the performance of the construction contract because the facility's existence and operations do not depend upon a requirement or term in the public works contract." *Id.*

### D. Federal Counterpart: The Davis-Bacon Act

In determining the scope of coverage under California's prevailing wage law, "California courts have turned to the Davis-Bacon Act [40 U.S.C. § 3141 *et seq.*] for guidance on issues not clearly answered by California authority." *Sheet Metal Workers*, 229 Cal. App. 4th at 211. The California Supreme Court has stated, "California's prevailing wage law is similar to the federal act and share[s] its purposes." *City of Long Beach*, 34 Cal. 4th at 954. The California prevailing wage law and the Davis-Bacon Act "set out two separate, but parallel, systems regulating wages on public contracts." *Sheet Metal Workers*, 229 Cal. App. 4th at 211 (internal quotation marks omitted). Therefore, the approach taken under the Davis-Bacon Act may provide useful guidance

9

"unless [it] is fundamentally inconsistent with portions of the prevailing wage law that one seeks to interpret." *Id.*

Unlike California's prevailing wage law, the Davis-Bacon Act "plainly imposes a geographical limitation on the application of the federal prevailing wage law." *Sheet Metal Workers*, 229 Cal. App. 4th at 202. It applies to "mechanics and laborers employed *directly on the site of work*." 40 U.S.C. § 3142(c)(1) (emphasis added). A federal regulation provides that the "site of work" does not include "permanent home offices, branch plant establishments, fabrication plants, tool yards, etc., of a contractor or subcontractor whose location and continuance in operation are determined wholly without regard to a particular Federal or federally assisted contract or project." 29 C.F.R. § 5.2(l)(3). Further, the regulations provide that "the transportation of materials or supplies to or from the site of work by employees of the construction contractor or a construction subcontractor is not 'construction, prosecution, completion, or repair.'" 29 C.F.R. § 5.2(j)(2).

The lack of express geographical limitation in California's prevailing wage law does not preclude looking to the Davis-Bacon Act for guidance. *Sheet Metal Workers*, 229 Cal. App. 4th at 211. As California courts have determined, the prevailing wage law is "ambiguous concerning its geographic scope" and "[t]here is no clear indication the Legislature rejected some geographical restriction on its application." *Id.* Although I take note of the federal approach to offsite work and transportation of materials and supplies by employees of contractors and subcontractors, it is not dispositive here.

## II. THE PREVAILING WAGE LAW DOES NOT APPLY TO MOBILIZATION WORK

### A. Integrated Aspect Test

The case law just discussed acknowledges the "integral" or "integrated aspect" test as the general framework for determining whether offsite work is "in the execution of" a public works contract. The question here is whether the mobilization work was "an integrated aspect of the flow process of construction," or "integral to the performance of that general contract." *Williams*, 156 Cal. App. 4th at 752-53. "What is determinative is the role the transport of the materials plays in the performance or 'execution' of the public works contract." *Williams*, 156 Cal. App. 4th at 752.

10

1    Some factors that may guide this inquiry include: (i) "whether the transport was required to carry
2    out a term of the public works contract"; (ii) "whether the work was performed on the project site
3    or another site integrally connected to the project site"; and (iii) "whether work that was
4    performed off the actual construction site was nevertheless necessary to accomplish or fulfill the
5    contract." *Id.*

6    Here, the offsite mobilization work performed by plaintiffs consisted of: (1) "loading
7    milling machines, which [were] stored at FMG's or Granite Rock's permanent yard or in off-site
8    storage locations, onto a lowbed trailer"; (2) "tying down or otherwise securing the heavy
9    equipment onto the lowbed trailer"; (3) "performing a light, [brake], and fluid level check of a
10   semi-truck used to transport the heavy equipment"; (4) "driving a transport truck transporting the
11   milling machine to a construction jobsite"; and (5) "driving the transport truck transporting the
12   milling machine back to FMG's or Granite Rock's permanent yard." UMF ¶ 11. For this work,
13   plaintiffs were paid at the rate agreed to in the MOA, which was less than the prevailing wage. *Id.*
14   at ¶¶ 4, 11. At the public works construction projects sites, plaintiffs also operated the milling
15   machine to break up asphalt and concrete. *Id.* ¶ 9. They received the prevailing wage for this
16   work. *Id.*

17   Similar to the fabrication shop in *Sheet Metal Workers*, the offsite storage locations where
18   plaintiffs performed the first three tasks "do not depend on any particular public works project for
19   their existence." UMF ¶ 12. Thus, the mobilization work was not "performed on the project site
20   or another site integrally connected to the project site." *Williams*, 156 Cal. App. 4th at 752.

21   Further, the parties offer no evidence of the governing public works contracts. UMF ¶ 9.
22   There is also no evidence of the custom or practice of the industry regarding transportation of
23   heavy equipment to public works project sites. Therefore, there is nothing to support a conclusion
24   that the "the transport was required to carry out a term of the public works contract." *Williams*,
25   156 Cal. App. 4th at 752, 754.

26   Plaintiffs argue that the mobilization work was nevertheless integral because "without the
27   [milling machine] on site, the job of grinding up the roadbed could not be performed and the
28   contract not executed." Plaintiffs' MSJ at 12. Pointing to *Sansone* and *Green*, they also argue that

11

the mobilization work is integral because "there are no intermediaries in relation to the transportation and the work in a direct continuum of time." Plaintiffs' Opposition (Dkt. No. 35) at 6. Plaintiffs contend that "the act of picking up machinery to transport it so that it could be used later that night by the operator on a public works project is neither illogical [nor] would lead to an unfair result," especially in light of the prevailing wage law's purpose to protect workers and make contractors compete fairly. Plaintiffs' MSJ at 13.

Both *Sansone* and *Green* found that the hauling of building materials was an integrated aspect in the flow process of construction and applied the relevant prevailing wage law. In *Sansone*, the hauled material (aggregate subbase) was brought from a site established exclusively for the public works project and furnishing this material was a contract term. 55 Cal. App. 3d at 439, 443. In *Green*, the hauled materials "were dumped or spread directly on the roadbed and were immediately used in the construction of the project." *Id.* at 444. A milling machine is more akin to a tool, not a building material. The transportation of the milling machine, therefore, plays a different "role . . . in the performance or 'execution' of the public works contract" than a building material, like aggregate subbase or asphalt. *Williams*, 156 Cal. App. 4th at 752.

As Granite Rock points out, plaintiffs' argument could be used to justify application of the prevailing wage law to the transportation of many things needed for a public works construction job, such as "tools, portable toilets, generators, potable water, lumber, asphalt, steel, . . . cranes, etc." for on-site use. Granite Rock's Reply (Dkt. No. 40) at 4. The California Court of Appeal has cautioned against an interpretation under which "nearly any activity related to the completion or fulfillment of a public works contract would be subject to the prevailing wage law, regardless of where it takes place or whether it plays a substantial role in the process of construction." *Sheet Metal Workers*, 229 Cal. App. 4th at 201-02.

Overall, the mobilization work consists of discrete tasks independent from plaintiffs' construction duties at the public works site. There is no evidence of any public works contract or industry practice that requires payment of the prevailing wage rate for the type of work performed in Granite Rock's permanent yard, whether it be loading and securing the milling machine and a lights, brakes, and fluid level check on the transport truck, or the transportation of the milling

machine to and from the yard. Importantly, the parties stipulated that Granite Rock's yard and storage facilities were not specific to any particular public works project. As in *Williams*, absent evidence by either contract or custom that the mobilization work was an integrated aspect in the flow process of construction, plaintiffs are not entitled to the prevailing wage.

### B. DIR's Public Works Manual

Plaintiffs also argue that not applying the prevailing wage law to the mobilization work goes against the DIR's Public Works Manual, which states:

> **Compensable Travel Time**. Travel time related to a public works project constitutes "hours worked" on the project, which is payable at not less than the prevailing rate based on the worker's classification, unless the Director's wage determination for that classification specifically includes a lesser travel time rate. (See Director's Decision in *In the Matter of Kern Asphalt Paving & Sealing Co., Inc.* (March 28, 2008), Case No. 04-0117-PWH. (See also *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575).) Travel time required by an employer after a worker reports to the first place at which his or her presence is required by the employer is compensable travel time, and includes travel **to a public work site**, whether from the contractor's yard, shop, another public work site, or a private job site. All such compensable travel time must be paid at the same prevailing wage rate required for the work actually performed by the worker **at the public works site.** No additional facts, such as whether tools or supplies are being delivered by the worker to the site, need be present.

Plaintiffs' Request for Judicial Notice (Dkt. No. 33-1) ("Public Works Manual") at 40, § 4.1.5 (original emphasis).[2] However, "[t]he Manual's text, standing alone, is . . . not binding on . . . the courts when reviewing DIR proceedings under the prevailing wage laws." Public Works Manual § 1.1. Plaintiffs recognize this, noting that "the Court can adopt the broader State of California language" in the Public Works Manual or "apply the narrower 'integrated aspect' of the

---

[2] Federal Rule of Evidence 201 allows courts to take judicial notice of a fact not subject to reasonable dispute because it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court "may properly take judicial notice of the documents appearing on a governmental website." *Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980, 998 (N.D. Cal. 2010) (Armstrong, J.). Plaintiffs' unopposed Request for Judicial Notice in Support of Motion for Summary Judgment (Dkt. No. 33) of the DIR's Public Works Manual, as well as several Prevailing Wage Determinations, published on the DIR website is GRANTED. For similar reasons, Plaintiffs' Request for Judicial Notice in Support of Opposition (Dkt. 36), Granite Rock's Request for Judicial Notice (Dkt. No. 41), and Plaintiffs' Request for Judicial Notice in Support of Reply (Dkt. No. 43) are also GRANTED.

construction test of *Sansone* and *Williams*." Plaintiffs' Reply (Dkt. No. 42) at 1.

The Public Works Manual cites *Kern Asphalt* and *Morillion*, two decisions regarding whether travel time is compensable. In *Morillion*, the California Supreme Court held:

> When an employer requires its employees to meet at designated places to take its buses to work and prohibits them from taking their own transportation, these employees are "subject to the control of an employer," and their time spent traveling on the buses is compensable as "hours worked."

22 Cal. 4th at 587 (2000).

In *Kern Asphalt*, the DIR Director assessed, among other issues, whether paving crew members who first reported to Kern Asphalt's shop and then were transported in company vehicles to a public works construction site must be paid for that travel time. Relying on *Morillion*, the Director found the travel time was compensable because Kern Asphalt required the employees to first report to the shop. The Director then had to decide what wage rate applied, reasoning: "The relevant prevailing wage determinations contain no special rate for travel time. In the absence of any evidence to the contrary, the required travel time must be regarded as incidental to the workers' regular duties and payable at the same prevailing rates that apply to the classification associated with those duties." *Kern Asphalt*, Case No. 04-0117-PWH, at 13 (Dkt. No. 33-2).[3]

Here, unlike in *Morillion* and *Kern Asphalt*, the question is not whether the time spent performing the mobilization work is compensable, but rather whether it is subject to the prevailing wage law. Additionally, as Granite Rock points out, "the type of work at issue in *Kern Asphalt* is distinct from the types of work at issue in this case." Granite Rock Oppo. at 4. Granite Rock notes that in *Kern Asphalt*, the DIR "concluded that the travel to the jobsite was 'incidental' to the workers regular duties" and the workers did not perform tasks during the travel time. *Id.* But plaintiffs' mobilization work was not incidental to their duties at the public works site. *Id.* Accordingly, I must apply the "integrated aspect" test discussed above.

---

[3] "Although the [DIR] has determined that its coverage determinations do not have precedential value, the determinations nonetheless constitute administrative interpretations entitled to considerable deference." *Sheet Metal Workers*, 229 Cal. App. 4th at 207.

### C. DIR's Other Published Travel and Subsistence Provisions

Plaintiffs also point out that the State of California's "Travel and Subsistence" published determinations for operating engineers do not include the MOA rate for "lowbed transport." Plaintiffs' MSJ at 7. These determinations, which reflect the Master Agreement, state:

> **11.04.00 Travel Time.** On any day on which an Employee is required to report to the yard, the Employee's time will start at the yard. On any day on which the Individual Employer requires an Employee to return to the yard and when, absent a pre-arrangement to cover transportation under 11.03.01, an Employee is required to report to the yard on that date, an Employee's time will end at the yard.

Dkt. No. 33, Exs. 5, 6. Plaintiffs note that wage determinations for other classifications of workers, such as Laborers and Traffic Control/Lane Closure Laborers, include travel and subsistence provisions that allow for rates lower than the general prevailing wage. Plaintiffs' Oppo. at 3.

Plaintiffs argue that the "Union and its signatory contractors decided to have a side deal to lower wages . . . and that while they could have mailed this side agreement to the State of California to publish the rates for all contractors to use, they chose not to do so." Plaintiffs' MSJ at 14. But, they argue, if Granite Rock "had sent the side letter . . . there is a good [chance] it would have been published by the State and all contractors could enjoy that benefit." Plaintiffs' Reply at 2. Because it did not, plaintiffs argue, Granite Rock is left with the broad language from § 11.04.00 of the Travel and Subsistence determinations and must apply the prevailing wage for general operating engineer work. *Id.*

Granite Rock responds that the DIR wage determinations, including the travel and subsistence provisions, do not determine the type of work subject to prevailing wage requirements. Granite Rock's Oppo. at 4. Instead, the determinations only "specify the craft classification to be used and wage to be paid to the worker if a type of work performed by the worker is covered by the prevailing wage requirements." *Id.* Because the mobilization work is not subject to the prevailing wage, Granite Rock argues, it did not have to send the MOA to the DIR.

I agree with Granite Rock. The type of work must first be found to be "in the execution" of a public works contract before the prevailing wage can be applied. Although the DIR is authorized to "determine coverage under the prevailing wage laws regarding either (1) a specific

project or (2) type of work to be performed," there is no evidence that it has done so regarding transportation of heavy equipment. Public Works Manual § 2.6 (citing 8 Cal. Code of Regs § 16001(a)(1)). As explained above, the mobilization work at issue here was not "in the execution" of a public works contract, and is not covered by the prevailing wage rate.

## CONCLUSION

The mobilization work was not an integrated aspect of the flow process of construction under the public works contracts. It consisted of discrete job tasks independent from the construction work performed by plaintiffs at the public works site. There is no evidence of the public works contracts or industry custom and practice that shows that the transportation of heavy equipment was "in the execution" of a public works contract. Therefore, plaintiffs are not entitled to the prevailing wage rate for the mobilization work. Granite Rock's motion for partial summary judgment is GRANTED, and plaintiffs' cross-motion is DENIED.

**IT IS SO ORDERED**.

Dated: November 28, 2016



WILLIAM H. ORRICK
United States District Judge